UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN HERBERT | CIVIL ACTION |
| VERSUS | NO: 12-0607 |
| TREVOR THORNTON, ET AL. | SECTION: "E" (4) |

**ORDER**

Before the Court is Plaintiff, Justin Herbert's ("Herbert") **Motion for Leave to File Third Supplemental and Amended Complaint** (R. Doc. 59) which seeks leave of Court to amend his complaint and add as defendants, The Church of Jesus Christ of Latter-Day Saints ("LDS") and State Farm Mutual Automobile Insurance Company ("State Farm"). The motion is opposed. *See* R. Docs. 63, 64. It was heard by oral argument on Wednesday, February 26, 2014.

I.  **Background**

This action was first brought in the Twenty-First Judicial District Court Parish of Tangipahoa, and removed on the basis of diversity jurisdiction to this Court, on March 7, 2012. *Id.* Herbert's complaint alleges that on or about January 23, 2012, he was allegedly driving a vehicle traveling eastbound on Highway 16 in Amite, Louisiana, when he was struck by a vehicle driven by defendant, Trevor A. Thornton, ("Thornton") traveling westbound, who was attempting to make a left turn. *See* R. Doc. 1, *see also* R. Doc. 30, pp. 1-2. Herbert alleges that he suffered severe injuries as a result of the accident. *Id.*

On August 20, 2012, Herbert filed an amended complaint, and on April 5, 2013, he filed a second amended complaint. *See* R. Doc. 15, 30. In the second amended complaint, Herbert named Trevor A. Thornton ("Thornton"), the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints ("the Corporation"), National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and State Farm Mutual Automobile Insurance Company ("State Farm") and as defendants in this action. *See* R. Doc. 30, pp. 1-2.

On August 8, 2013, Herbert filed a "Joint Motion to Dismiss" State Farm from this action without prejudice. *See* R. Doc. 45. This Court granted Herbert's Joint Motion to Dismiss State Farm, on August 9, 2013. *See* R. Doc. 46. Shortly thereafter, on October 11, 2013, the parties filed a joint motion to continue the deadlines and trial. *See* R. Doc. 47. The Court granted this motion on October 17, 2013. *See* R. Doc. 49. On November 14, 2013, this Court issued a Scheduling Order, setting forth the applicable deadlines. *See* R. Doc. 50. The presiding District Judge set forth the deadline for filing all amendments to pleadings as December 9, 2013. *Id.*

As to the instant motion, Herbert acknowledges that the pleading deadline in this matter expired on December 9, 2013, but contends that "good cause" exists to warrant the allowance of his request to amend the complaint and add as additional defendants, LDS, an unincorporated, nonprofit, religious organization, and State Farm. *See* R. Doc. 59, p. 1.

Specifically, Herbert contends that although defendants had ample opportunity since July 2013, counsel for defendants failed to reveal a conflict of interest in the dual representation of Thornton and the Corporation, until January 23, 2014. *Id.* at 2. Thus, Herbert seeks to amend his complaint and add State Farm as a defendant, although it was previously dismissed from this action on August 9, 2013, as it may be liable, following the recent disclosure of the conflict of interest.

2

Furthermore, Herbert contends that on January 31, 2014, during the deposition of Jim Wall, the Mission President, it was first established that the party vicariously responsible for the actions of Thornton, is not the Corporation, but rather, is an associated legal entity of it, LDS. Therefore, Herbert seeks to amend his complaint and add LDS as the proper defendant in this matter. *Id.*

## II.     Standard of Review

Federal Rules of Civil Procedure ("Rule") 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). This, and other federal rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981). Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Id*.

Leave to amend is by no means automatic, but is within the sound discretion of the trial court. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). In exercising its discretion, the trial court must determine that there is a "substantial reason" for the delay. *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 425 (5th Cir. 2004). The Court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of

the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

## III. Analysis

Herbert, filed the instant motion, after the expiration of deadlines set by this Court, seeking leave to file its third supplemental and amended complaint to add LDS, the proper party employer of Thornton, and to add State-Farm, who was previously dismissed from this action without prejudice. *See* R. Doc. 59-1, p. 1-2.

### A. Good Cause -16(b)

Although Rule 15(a) governs the amendments of pleadings, the Fifth Circuit has established that Rule 16(b) "governs the amendment of pleadings after a scheduling order deadline has expired." *S & W Enters., L.L.C. v. S. Trust Bank of Ala., NA,* 315 F.3d 533, 536 (5th Cir. 2003). Rule 16 provides that a scheduling order may only be modified for good cause shown and with the Judge's consent. *See* Fed. R. Civ. Pro. 16(b)(4).

To determine whether a party has provided good cause to amend a pleading after the deadline set in the Scheduling Order, Courts may examine four factors: "(1) the explanation for the untimely conduct; (2) the importance of the requested untimely action; (3) the potential prejudice in allowing the untimely conduct; and (4) the availability of a continuance to cure such prejudice." *Huey v. Super Fresh/Sav-A-Center, Inc.*, No. 07-1169, 2008 WL 2633767, at *1 (E.D. La. June 25, 2008) (citing *S & W Enters.,* 315 F.3d at 535. "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters., LLC*, at 535 (internal quotations and citations omitted).

Before considering the merits of the motion to amend, in accordance with the presiding Judge's Scheduling Order, amendments to pleadings were due no later than December 9, 2013. *See* R. Doc. 50. No extensions were granted, and the Scheduling Order expressly stated that any motion, or in this instance, amendment would necessitate a showing of good cause. *Id.* Plaintiff Herbert's motion was filed on February 6, 2014, nearly two months after the deadline, and is thus, untimely. Therefore, the Court must first determine whether good cause exists to warrant the allowance of this amendment.

Herbert argues that although he diligently tried to meet the Court's deadlines, it was not until the deposition of the mission president, Jim Wall, taken on January 31, 2014, that it was first established that the party vicariously responsible for the actions of Thornton, was not the Corporation, but rather, an associated legal entity of it, LDS - the Church. *See* R. Doc. 59-1, p. 2, 5.[1]

During this deposition, Herbert contends that Wall revealed that neither he nor Thornton performed duties for the Corporation, but rather, they performed the duties of their mission for the Church. *Id.* at 7. Herbert argues that this was the first time he was ever given notice that another entity could have been responsible for Thornton's actions. *Id.* at 6. As a result, Herbert seeks to amend his complaint and add LDS as the proper defendant in this matter. *Id.*

In opposition, the defendants contend that with the trial scheduled to commence in less than five months, this motion is a last ditch effort in an attempt to destroy the Court's diversity jurisdiction by adding LDS, the Church to this action. *See* R. Doc. 63, p. 2. Furthermore, defendants

---

[1] Herbert contends that the conflict was known by the defendants since July 19, 2013, when counsel for the Corporation and Thornton responded to Interrogatories and Requests for Production of Documents on behalf of both parties. *Id.* at 3. Herbert also contends that defense counsel failed to plead any affirmative defenses which would have suggested that the Corporation was not the proper defendant in this action.

5

argue that this motion comes months after the deadline for amendments has passed, and years after Herbert "was put on notice of the distinction between the Church (a spiritual entity with no legal existence) and Defendant [the Corporation] (a Utah corporation that holds assets and conducts legal affairs on behalf of the Church)." *Id.* Therefore, defendants contend that Herbert's explanation of the facts, law and that good cause exists to warrant the allowance of the amendment is without merit. As such, defendants argue that Herbert's motion should be denied.[2]

Fed. R. Civ. P. ("Rule") 16(b) requires the district court to, among other things, limit the time for the parties to join other parties should a party attempt to amend its pleadings to join another party after the deadline for taking such an action has expired. The district court must first determine whether to modify its scheduling order, under the standards of Rule 16(b). If the Court determines that the movant satisfies the requirements of Rule 16(b), it may also consider the liberal standards of Rule 15(a), which governs amendments to pleadings. *Howell v. Standard Motor Products, Inc.,* 2001 WL 196969, at *1 (N.D. Tex. Feb. 26, 2001).

Rule 16(b) states that a party seeking to modify a scheduling order after the deadlines have expired, must show good cause. *Id. See also, Matias v. Taylors Intern. Serv's, Inc.,* 2010 WL 3825402, at *3 (E.D. La. Sept. 24, 2010); *see S & W Enters.,* 315 F.3d at 536; *Valcho v. Dallas County Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) ("when as here, the deadline for seeking leave to amend pleadings has expired, a court considering the motion to amend must first determine whether to modify the scheduling order under the good cause standard for [Rule] 16(b)(4)").

---

[2]Defendant, Thornton, also opposed the motion, reiterating the Corporation's argument that Herbert is attempting to destroy diversity jurisdiction of this Court by seeking to amend the complaint and add the Church as a defendant in this matter. *See* R. Doc. 64, p. 5. Thornton also argues that permitting this amendment would prejudice the Defendants and delay resolution of this action. *Id.*

The good cause standard focuses on the diligence of the party seeking to modify the scheduling order. While relevant to an analysis under Rule 15(a), the absence of prejudice to the nonmoving party does not constitute good cause under Rule 16(b). *Howell,* at *1; (citing *Am. Tourmaline Fields v. Int'l Paper Co.,* 1998 WL 874825, at *1. Likewise, the mere inadvertence by the movant does not satisfy the good cause requirement. *See id.* Instead, the moving party may "demonstrate good cause by showing that, despite his diligence, he could not have met the scheduling deadline." *Howell,* at *1; *McCombs v. Allwaste Recovery Sys.,* 1999 WL 102816 at *2; *Am. Tourmaline Fields,* at *1 (internal citations omitted).

Here, the Court finds that the record evidences that there was an apparent conflict between Thornton and the Corporation from the inception of this action, as indicated by the answers submitted separately by Thornton and the Corporation, although both pleadings were filed by the same attorneys, Jerry Glas and Douglas Elliot. *See e.g.,* R. Docs. 5, 19, 34 and 40. However, the Court finds that this conflict was not apparent to counsel for Herbert, as it was reasonable for him to assume that this issue was resolved with both parties being represented by the same attorney. It was not until January 23, 2014, when Jerry Glas withdrew from the instant action, that there was a clear indication not only in the pleadings, but in actuality, which gave Herbert notice that there was a conflict of interest between Thornton and the Corporation. Therefore, the Court finds that the lack of notice of the conflict of interest until 2014 establishes good cause to justify modification of this Court's Scheduling Order. *See Huey*, 2008 WL 2633767, at *1; citing *S & W Enters.,* 315 F.3d at 535.

  **B.** <u>**Leave to Amend - 15(a)**</u>

In determining that good cause exists to warrant the modification of this Court's Scheduling Order, the Court shall address the merits of Herbert's request to amend and supplement the second

amended complaint with the rejoinder of State Farm, and the addition of the Church of Latter-Day Saints ("LDS").

### 1. State Farm

Herbert seeks to amend the second amended complaint to re-join State Farm, a party who was previously dismissed from this action without prejudice on August 9, 2013. Herbert contends that State Farm was originally dismissed due to the dual representation of defendant employee and employer, and the fact that there was no apparent issue of whether Herbert was in the course and scope of his employment at the time of the accident. *See* R. Doc. 46. However, because the circumstances have changed, it seeks to amend its complaint and re-join State Farm as an additional defendant in this matter.

During oral argument, counsel for defendants represented that they do not object to this request. Therefore, Herbert's request to amend its complaint and re-join State Farm as an additional defendant is **GRANTED AS UNOPPOSED**.

### 2. The Church of Jesus Christ of Latter-Day Saints ("LDS")

Here, Herbert seeks to add LDS, to the instant action because he contends that it, and not the Corporation, may be his "employer" as revealed from Mission President, Jim Wall's deposition, on January 31, 2014. *See* R. Doc. 59-1, p. 4-5. Furthermore, Herbert argues that the church is not an unincorporated association, and that it is capable of being sued. *See* R. Doc. 74-1, p. 1.

In opposition, the Corporation argues that the church, LDS, is a spiritual entity not capable of being sued because it is a spiritual, unincorporated association with no assets, which is separate from the Corporation, the legal entity capable of being sued. *See* R. Doc. 63, p. 5. The Corporation contends that LDS was incorporated in 1923. *Id.* This incorporation separated the organization into two separate and distinct entities for which the Corporation was created as a legal entity to hold the

assets and conduct the secular affairs on behalf of LDS, the ecclesiastical organization, which remained an unincorporated spiritual organization, void of legal personality. *Id.*[3]

Because LDS is a secular organization, separate and distinct from the incorporated aspect of the Church which is the Corporation, it is deemed an "unincorporated association" which means that for purposes of diversity jurisdiction, it is considered to be a citizen of every state where any member of the association resides. *See* R. Doc. 63, p. 6; citing *Hummel v. Townsend*, 883 F.2d 367, 369 (5th Cir. 1989); *United Steelworkers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965)). Therefore, the Corporation argues that if leave were granted, and LDS permitted to enter this suit, this Court's diversity jurisdiction would be destroyed.

Although Rule 15(a) provides that "leave to amend should be freely given" and Rule 20 permits joinder of proper parties, when the court is "faced with an amended pleading naming a new nondiverse defendant in a removed case, [the court must] scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir. 1987). As such, when an amendment would destroy jurisdiction, "most authorities agree that leave should be denied in the absence of strong equities in favor of amendment." *Campagna v. Averitt Exp., Inc.*, No. 99-1007, 1999 WL 386652, *1, n.6 (E.D. La. June 10, 1999); citing *Whitworth v. T.N.T. Bestway Transp. Inc.*, 914 F.Supp. 1434 (E.D.Tex.1996) (citing *Hensgens*, 833 F.2d at 1182).

---

[3]*See Folwell v. Bernard, By and Through Bernard,* 477 So.2d 1066, 1063 (Fla. App. 2nd Dist. 1985), 486 So.2d 595 (1986) ("When a religious society incorporates, it assumes a dual existence; [. . .] the church, which is conceived and endures wholly free from the civil law, and the other, the corporation [. . .] [t]he components of the ecclesiastical interrelationship between the parent church and the subordinate body cannot be permitted to serve as a bridge capable of reaching the non-secular parent in a civil proceeding.")(citing *Trinity Presbyterian Church of Montgomery v. Tankersley*, 374 So.2d 861 (Ala. 1979); *see also Willis v. Davis,* 323 S.W.2d 847, 848 (Ky. 1959) ("Such corporation is civil in nature and is an entity distinguishable from an ecclesiastical society or association, the one having jurisdiction over the temporal or secular and the other over ecclesiastical or spiritual affairs.")). *See also* 66 Am. Jur. 2d Religious Societies § 5.

The Fifth Circuit has held that when considering an amendment which would destroy the jurisdiction of a court, "justice requires that the district court consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interest of not having parallel lawsuits." *Hensgens,* 833 F.2d at 1182. These factors include "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, [and] [4] any other factors bearing on the equities." *Id.*

During oral argument, counsel for the Corporation conceded on the record that the Corporation was Thornton's employer, and that he did not work for LDS. Furthermore, counsel for the Corporation indicated that there is no concern about its ability to satisfy a judgment, as it is insured and financially sound. Therefore it contended that LDS need not be added to this action, because it was not the employer of Thornton at the time of the incident.

In opposition, counsel for Herbert argued that the Corporation's admission on the record of its status as Thornton's employer is an attempt to "fabricate status so that they can stay in federal court." He then went on to state that LDS is an entity capable of being sued because it is named on the Corporation's policy of insurance as an insured.

In response, the Corporation stated that Thornton "is our agent" and LDS should not be added as it possesses no assets, money, or representatives to testify on its behalf during trial.[4] Counsel for the

---

[4] There is case law which suggests that an unincorporated ecclesiastical organization engaged solely in secular activities may not be sued, but that if it engages in nonsecular activities it may open itself to liability in civil suits. *See e.g., Turner v. Church of Jesus Christ of Latter-Day Saints, et al.,* No. 3:95-CV-1354, 1996 WL 34447787 at *3 (N.D. Tex. Feb. 22, 1996) (The Court cites to *Tankersley* and *Folwell,* and interpreted that according to the *Tankersley* court, the question of whether an "entity is amenable to suit appears to be one of whether either entity engaged in secular activities." However, *Tankersley* is "not necessarily ruling out the possibility of suit against the non[-]corporate form if that entity engaged in secular, as opposed to ecclesiastical, activities.").
 Here, the Court finds that neither Herbert's original complaint, amended complaint, nor his second amended complaint allege that LDS was engaged in secular activities. In each of these complaints, Herbert alleges that his injuries were sustained as a result of Thornton and the Corporation of the Church of the Presiding Bishop of the Church of Jesus

Corporation indicated that the only listed representative of LDS is a "member of the kingdom of god," which will not likely be able to make an appearance in Court.

Therefore, the Court stated that with an admission of employer status on behalf of the Corporation, that maybe counsel for Herbert did not "want for Thornton to be the agent of the Corporation," but that he would rather him be the agent of LDS which would inherently destroy diversity jurisdiction. To this line of questioning counsel for Herbert responded "that is exactly what I want."

The Fifth Circuit has held that when an amendment would destroy jurisdiction, "most authorities agree that leave should be denied in the absence of strong equities in favor of amendment." *Campagna v. Averitt Exp., Inc.*, No. 99-1007, 1999 WL 386652, *1, n.6 (E.D. La. June 10, 1999); citing *Whitworth v. T.N.T. Bestway Transp. Inc*., 914 F.Supp. 1434 (E.D.Tex.1996) (citing *Hensgens*, 833 F.2d at 1182). Furthermore, "a request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (i.e., a request fraudulently to join a party) [should] **never** be granted." *Id.* (Emphasis added). Therefore, when there exists no colorable claim against the party the plaintiff is seeking to join, joinder should be disallowed in the interest of justice, as those parties "would never be allowed to become defendants in the first place." *See Cobb v. Delta Exports, Inc*., 186 F.3d 675, 678 (5th Cir. 1999).

Because the Corporation has admitted on the record that it was Thornton's employer, and that LDS, is a non-diverse, spiritual organization without assets, money, or a representative for which it would use during trial, the Court finds that the addition of LDS is clearly an attempt at fraudulent

---

Christ of Latter-Day Saints' "the Corporation" negligence, and that the Corporation was the owner of the car in which Thornton was driving, but he never alleges any actions attributable to LDS. *See e.g.*, R. Doc. 1-1, p. 4; R. Doc. 15, R. Doc. 30. In his proposed third supplemental and amended complaint, Herbert also does not allege any actions attributable to LDS which would suggest that it was engaged in non-secular activities, rather, he simply seeks to add LDS as a named party, and that he "was in the course and scope of his mission or employment with [LDS]." *See* R. Doc. 59-6, p.2, ¶ 2.

joinder. As a result, Herbert's motion for leave to amend to add LDS, the Church, is **DENIED**.

### IV.     Conclusion

**IT IS ORDERED** that Plaintiff's **Motion for Leave to File Third Supplemental and Amended Complaint (R. Doc. 59)** is **GRANTED AS UNOPPOSED** as to Plaintiff's request to re-join State Farm. Plaintiff has **seven (7) days** to file his amended complaint.

**IT IS FURTHER ORDERED** that it is **DENIED** as to Plaintiff's request to join the Church of Jesus Christ of Latter-Day Saints.

New Orleans, Louisiana, this 5th day of March, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**